Filed 7/16/15 P. v. Montanez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>MIGUEL ANGEL MONTANEZ,<br><br>　　　Defendant and Appellant. | B255385<br><br>(Los Angeles County<br>Super. Ct. No. VA118492 & VA125240) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County. Raul A. Sahagun, Judge.  Affirmed.

　　　Dan Mrotek, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Miguel Angel Montanez of first degree murder. On appeal, he contends: (1) it was error to give CALCRIM No. 316; (2) the trial court had a sua sponte duty to instruct on voluntary manslaughter as a lesser included offense of murder; and (3) trial counsel was ineffective for failing to object to sentencing errors. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and Leonel Santiago were charged by amended information with the first degree murder of Danny Renteria.[1] Gun use and a gang enhancement were alleged; in addition, defendant was charged with being a felon in possession of an assault weapon and a gang enhancement was alleged as to that count as well.[2] Prior to trial, defendant pled no contest to only the felon in possession charge and admitted the gang enhancement as to that charge. Defendant and Santiago were jointly tried by separate juries on the murder charge. During the trial, Santiago pled no contest to voluntary manslaughter and admitted a prior strike. The trial continued as to defendant.

A.     *People's Case*

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358), the evidence established that defendant and co-defendant Santiago were members of the same criminal street gang, but from different cliques. Santiago was several years older than defendant and in 2007 he was in prison when defendant became romantically involved with Vanessa Lira, who was a good friend of Santiago's sister. Lira was also murder victim Danny Renteria's first cousin. Early in her relationship with defendant, Lira told him that she was raped by her cousin Danny

---

[1]     Because the victim and several witness have the last name "Renteria," we refer to them by their first names to avoid confusion.

[2]     The original information was dismissed when the People were not ready for trial, but the case was re-filed two months later.

when she was a little girl. Defendant cried and told Lira that he loved her, but they never discussed the subject again. In gang culture, pedophiles are "green lighted," which means anyone can shoot them. After Santiago was released from prison in early August 2010, he spent more time with defendant than anyone else. In an exchange of text messages on August 20, 2010, defendant told Lira he was "going on a mission," which was a phrase defendant often used. Lira did not know where he was going, but told him to be safe, as she usually did.

At about 12:15 a.m. on Saturday, August 21, 2010, Danny was fatally shot while sitting on the front porch of the Bellflower home in which he lived with his mother (Veronica), father (Antonio) and brother. A short picket fence separates their property from the sidewalk. Jose Angel Gomez lived across the street. For several hours before the shooting, Gomez had noticed two men loitering across the street from the Renteria house. Gomez did not witness the shooting, but upon hearing gunshots, he ran out of his house, saw Danny lying on the ground and two men running away. Gomez did not see whether the man in the lead had a gun or what car he got into, but Gomez saw a gun in the hand of the man bringing up the rear. That man pointed the gun at Gomez and said, "Don't do it. Don't do it," then got into the driver's seat of a white Honda, which fled the scene followed closely by another, darker colored car.

The shots were heard by another neighbor as well as Danny's mother and father, all of whom testified. While trying to render aid to his son, Antonio saw someone in a white shirt running away; moments later, he saw a dark car followed by a lighter colored car fleeing the scene. As she ran out behind Antonio, Veronica saw two men on the sidewalk side of her picket fence. Those men ran north and got into two different cars, one light and one dark. As those cars drove past her, the light car was behind the dark car.

Danny was shot three times, including one fatal head shot and two non-fatal shots to the lower back and right upper arm. The bullets that caused the head and lower back wounds were recovered and booked into evidence. The only other bullet in evidence was found the next day, lodged in the front door of the house across the street from the

3

Renteria home. All three bullets were .45 caliber and fired from the same weapon, most likely a single-action revolver. No weapon was ever found.

Confederate Santiago's DNA was found on a beer bottle and cigarette butt recovered from the area where Gomez saw the two men loitering; Santiago's fingerprints were on the beer bottle and on the driver's side door of a stolen white Honda Accord found parked in front of defendant's home in Norwalk the day after the shooting. Two months after the murder, Santiago was arrested for an unrelated bank robbery. In an October 22, 2010 interview, Santiago told detectives he was with defendant when defendant shot Danny. In Santiago's version of events, Santiago was unarmed and accompanied defendant out of a sense of loyalty.

After recordings of Santiago's October 22, 2010 interview and a November 10, 2010 follow-up interview were played to the Santiago jury only, Santiago pled no contest to voluntary manslaughter and admitted a gang enhancement in exchange for a 26-year prison sentence which included this case and the robbery convictions for which he was already in custody. An additional condition was that Santiago testify truthfully in defendant's case. Santiago testified that he did not know what defendant planned to do when, on August 20, 2010, Santiago agreed to do defendant a favor.[3] Driving a stolen white Honda Accord, Santiago followed defendant, who was driving an Infiniti, to a location in Bellflower. They arrived at about 8:00 or 9:00 p.m., parked, and waited several hours. During that time, defendant showed Santiago a chrome .45 revolver; defendant explained his cousin had been raped and he was going to "handle it." Later, when Danny came out and sat in a chair on the porch of the Renteria house, Santiago followed as defendant crossed the street, stepped over a small fence, walked up to the porch and asked Danny his name. As soon as Danny said his name, defendant shot him. At the first shot, Santiago turned and ran towards his parked car. As he was running, Santiago heard three or four more shots. When he turned around, Santiago saw defendant

---

[3] At the time, Santiago incorrectly believed defendant's surname was "Martinez" not "Montanez;" Santiago also knew defendant as "Mikey" and "Spooky."

about 18 feet behind him, also running towards their cars.  When a man came out of the corner house holding what Santiago thought might be a gun, defendant pointed his own gun at the man and said, "Don't be a hero."  No shots were exchanged.  Santiago drove home and did not talk to defendant again until the next day.  Recordings of Santiago's October 22 and November 10 interviews, which were generally consistent with his trial testimony, were played for the jury.[4]

B.      *Defense Case*

In 2009, V.M. was 15 and Danny was 20 years old when they became acquainted in a telephone chat room.  They met in person just once.  On that occasion, they had sex in Danny's truck.  Afterwards, they remained friends and stayed in contact by text and telephone.  V.M. never told anyone, including her then boyfriend, about her relationship with Danny.  When contacted by police about Danny's murder, V.M. falsely denied knowing Danny.

Fernando Partita had been friends with Danny since middle school.  He was with Danny at a skate park when Danny and two men got into a dispute over $2 Danny had borrowed from one of the men.  After Partita gave Danny $5, which Danny gave to the man, the man's companion tried to goad Danny into a fight, but the argument dissipated and both pairs of men went their separate ways.  Partita was with Danny at a Laker game when Danny and his cousin got into a physical altercation.  Danny once asked Partita if Partita wanted to buy some heroin that Danny and his cousin had acquired.  Partita did not know when these three events occurred.

C.      *Verdict*

Defendant was found guilty of first degree murder; the jury found true a principal used and discharged a firearm enhancement but found not true a personal firearm use enhancement and a gang enhancement.  Defendant was sentenced to 32 years to life in

_____

[4]      On cross-examination, Santiago testified that his plea deal required him to testify truthfully, which meant consistent with his recorded statements.

prison, comprised of 25 years to life for the murder conviction, plus a consecutive 7 years for the felon in possession conviction (comprised of the 3 year upper term plus an upper term of 4 years for the gang enhancement). He timely appealed.

## DISCUSSION

*A.*     *Instructional Errors*

      1.      CALCRIM No. 316

Defendant contends it was error to give CALCRIM No. 316, which, as given without objection, reads:

> "If you find that a witness has been convicted of a felony, *you may consider that fact only in evaluating the credibility* of the witness's testimony. The fact of a conviction does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable. [¶] If you find that a witness has committed a crime or other misconduct, you may consider that fact *only in evaluating the credibility* of the witness's testimony. The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable." (Italics added.) [5]

Defendant's argument goes like this: the jury's "not true" finding on the personal gun use enhancement must mean the jury disbelieved Santiago's version of events and instead believed Santiago was the shooter; therefore, it must have found defendant guilty of the killing on an aiding and abetting theory; the jury should have been allowed to consider Santiago's voluntary manslaughter plea as evidence that defendant was guilty of aiding

---

[5]      The jury was also instructed: ". . . In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors that you may consider are: [¶] . . . [¶] Has the witness been convicted of a felony? . . . " (CALCRIM No. 226.) And: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other." (CALCRIM No. 303.)

6

and abetting a voluntary manslaughter and not murder; CALCRIM No. 316, considered together with CALCRIM Nos. 226 and 303 (set forth in footnote No. 7), improperly precluded the jury from doing so. We disagree.

We do not agree with defendant's factual premises. First, a "not true" finding on the personal gun use enhancement did not necessarily mean the jury convicted him on an aiding and abetting theory. (See *People v. Garrison* (1989) 47 Cal.3d 746, 781 [failure to reach a verdict on personal use enhancement did not demonstrate that murder verdict was based solely on aiding and abetting theory].) In addition, a disposition by plea does not necessarily reflect a defendant's true culpability for a crime because it is the result of a bargain. Here, Santiago pled no contest to voluntary manslaughter and admitted a gang enhancement in exchange for a 26 year prison sentence which included this case and the robbery convictions for which he was already in custody. There is no indication Santiago's plea to the crime accurately demonstrated his involvement in the shooting. Instead, it was a bargained-for disposition to which both Santiago and the prosecution agreed.

Further, because Santiago's plea was relevant only to his credibility and not to whether defendant committed murder or voluntary manslaughter, the jury was properly instructed and we find no error.[6]

First, the standard of review: challenges to given instructions are subject to review "to the extent [the defendant's] substantial rights were affected. [Citation.]" (*People v. Lucas* (2014) 60 Cal.4th 153, 281, fn. 47; Pen. Code, § 1249 ["The appellate court may

---

[6] Even if the jury had concluded that Santiago were the shooter, that fact does not tend to prove that defendant was more likely to have committed voluntary manslaughter than murder. There was no evidence that defendant had the intent consistent with either forms of voluntary manslaughter.

In his Reply Brief, defendant also argues Santiago's voluntary manslaughter plea was relevant because the "not true" finding on the gang enhancement necessarily means the jury did not believe defendant was the instigator or that Santiago and defendant jointly participated in a revenge killing. Whether the jury believed the killing was for the benefit of the gang or was fueled by personal revenge does not make Santiago's voluntary manslaughter plea relevant to anything other than his credibility as a witness.

7

also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."]) Defendant contends his substantial right to present a defense was affected by the challenged instruction. We turn next to the substantive law.

" 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Only relevant evidence is admissible. (§ 350.) The test of relevancy is whether it tends logically, naturally and by reasonable inference to establish material facts such as identity, intent or motive. (*People v. Lee* (2011) 51 Cal.4th 620, 642.)

Evidence of a witness's felony conviction is admissible because it is relevant to his or her credibility.[7] But the crime of which one co-participant is convicted is not generally relevant to determining what crime was committed by the other participant. This is because an aider and abettor is a principal in the crime. (Pen. Code, § 31.) Since aiders and abettors are liable for their own actions as well as their accomplice's actions, it is often unnecessary to decide who was the direct perpetrator and who was the aider and abettor. (*People v. Garcia* (2002) 28 Cal.4th 1166, 1173.) An aider and abettor may be convicted even if the direct perpetrator is not: " ' "[T]he fact that certain defendants may escape conviction for their crimes is not any legal or logical reason why another defendant, where substantial evidence has been introduced to sustain his conviction, should be exonerated and be permitted to escape punishment for his crime." [Citation.]' [Citation.] " (*Id.* at p. 1178, quoting *People v. Palmer* (2001) 24 Cal.4th 856, 861.)

---

[7] See California Constitution, article 1, section 28(f)(4) ["Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment . . . ."]; Evid. Code, § 788 ["For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ."]; Evid. Code, § 787 ["Subject to Section 788, evidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness."].

An aider and abettor may also be found guilty of a greater or lesser offense than the actual perpetrator of a homicide, depending on the individual mental state of each. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1122 [aider and abettor may be guilty of greater crime]; *People v. Nero* (2010) 181 Cal.App.4th 504, 507 [aider and abettor may be guilty of lesser crime].)  This is because, although each participant's criminal liability depends both on his own *actions* and the actions of the other person, it depends *only on his own mens rea*, not the other person's.  (*McCoy,* at p. 1118; see *People v. Jennings* (2010) 50 Cal.4th 616, 641-642 ["Aider and abettor liability is premised on the combined acts of all the principals, but also on the aider and abettor's own mens rea."].)

*People v. Wilson* (2008) 43 Cal.4th 1 (*Wilson*), is instructive.  In that case, Sadewater drove Wilson to a market that Wilson intended to rob; during the course of the robbery, Wilson fatally shot the store clerk.  Wilson and Sadewater were charged with attempted robbery and first degree murder.  Wilson was convicted of murder and the jury found the robbery-murder special-circumstance allegation to be true.  In a separate trial, a jury convicted Sadewater of being an accessory after the fact and attempted robbery, but acquitted her of murder.  On appeal from convictions of attempted robbery and special circumstance murder, Wilson contended that the trial court had a sua sponte duty to instruct on the lesser included offense of first degree premeditated murder and second degree murder because Sadewater's conviction suggested that her jury believed the attempted robbery and the earlier killing were separate crimes.  Our Supreme Court was unpersuaded:  "But whatever the jury might have thought in that trial, it is not evidence in this case.  (See *People v. Palmer* (2001) 24 Cal.4th 856, 858 [citation] ['If substantial evidence supports a jury verdict as to one defendant, that verdict may stand despite an apparently inconsistent verdict as to another defendant'].)"  (*Wilson*, at p. 17.)

While *Wilson* involved evidence of a conviction, in this case the jury received evidence that Santiago pled no contest to voluntary manslaughter for the killing of Danny Renteria in exchange for a 26 year sentence.  There was no error in giving CALCRIM No. 316, because Santiago's no contest plea to voluntary manslaughter was relevant only to his credibility, and was not relevant to whether defendant committed murder or

9

voluntary manslaughter. That question depended solely on proof of defendant's mens rea and in no way on Santiago's plea.[8]

## 2. *Voluntary Manslaughter Instructions*

Defendant contends the trial court had a sua sponte duty to instruct on voluntary manslaughter as a lesser included offense of murder. He argues the following evidence supports such an instruction: the unexplained several year gap between the killing and when defendant learned of the rape; Santiago's testimony that he was driving the white Honda that night, coupled with neighbor Gomez's testimony that he saw the man with a gun drive away in the white Honda, tends to prove that Santiago, not defendant, was the shooter; that Danny came out on the porch that night was the result of "luck," not planning. We disagree.

Trial courts have a sua sponte duty to instruct on all lesser necessarily included offenses supported by the evidence, including voluntary manslaughter as a lesser included offense of murder. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149.) The duty arises only if there is substantial evidence raising a question as to whether all of the elements of the charged offense are present. (*People v. Anderson* (2006) 141 Cal.App.4th 430, 446.) On appeal, we independently determine whether a voluntary manslaughter instruction should have been given. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.)

---

[8]    The converse of defendant's argument is helpful to understand its fallacy. A prosecutor would not be able to introduce evidence that Defendant A pled guilty to premeditated murder in order to prove that Defendant B had also committed murder rather than manslaughter. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1322 [one defendant's guilty plea is inadmissible to prove that another defendant participated in the crime]; see *United States v. Halbert* (1981) 640 F.2d 1000, 1004 ["As a principle of general acceptance, guilty plea or conviction of a codefendant may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial."].) Doctrinally, we see no difference to introduction of such evidence by the defense.

First degree murder is a willful, deliberate, and premeditated killing with malice aforethought. (Pen. Code, §§ 187, 189.)[9] Malice may be express or implied. "It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188.) In the absence of malice, an unlawful killing is manslaughter, not murder. (§ 192.) It is voluntary manslaughter when it is committed "upon a sudden quarrel or heat of passion." (§ 192, subd. (a).) To reduce murder to manslaughter, the heat of passion must have been the result of provocation by the victim. (*People v. Steele* (2002) 27 Cal.4th 1230, 1252.) Notwithstanding that the provocation may occur over a period of time (*People v. Wharton* (1991) 53 Cal.3d 522, 569, citing *People v. Berry* (1976) 18 Cal.3d 509 [13 days]; *People v. Borchers* (1958) 50 Cal.2d 321 [two weeks]), if " 'sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary manslaughter . . . .' [Citations.]" (*People v. Hach* (2009) 176 Cal.App.4th 1450, 1459 [five days between argument and killing was a sufficient cooling off period].)

In *People v. Hudgins* (1967) 252 Cal.App.2d 174, 181, for example, the court found no evidence warranting voluntary manslaughter instructions where the evidence showed the defendant broke into a house and shot the man he believed was his wife's paramour. "There was no evidence of a sudden quarrel, but only proof of a violent attack by an armed man upon one who was unarmed and who made a futile attempt to save his own life. There was no sudden heat of passion, but only evidence of a persistent, brooding jealousy which spurred appellant to a decision to arm himself and lie in wait for a victim. All the evidence indicated it was not a sudden, impetuous decision, acted upon without time and opportunity for reflection and the cooling off of suddenly aroused emotion. It was a decision reached after long deliberation and meditation, and careful preparation to carry into execution the threats appellant had repeatedly uttered. Upon

---

**9**     All future undesignated statutory references are to the Penal Code.

11

these facts the killing was not manslaughter; it was, at the least, murder of the second degree."

Here, as in *Hudgins* there was no evidence of sudden quarrel or heat of passion. On the contrary, the evidence showed only that, years after learning that his girlfriend had been sexually assaulted by her cousin Danny, defendant armed himself and lay in wait across the street from Danny's home for several hours, until Danny came outside. And when the unarmed Danny did so, defendant shot him multiple times, including one fatal head shot. Contrary to defendant's argument, neither the time gap between defendant's discovery of the sexual assault and the killing, Gomez's testimony that a man with a gun got into a light-colored Honda (the car Santiago admitted he was driving that night), nor the chance occurrence of Danny coming out onto the porch that night, is evidence of a sudden quarrel or heat of passion.

### 3. Harmless Error

Since we find no error, we need not address defendant's contention that the instructional errors he asserts were prejudicial.

### B. Defendant Did Not Receive Ineffective Assistance of Counsel

Defendant admitted being a felon in possession of an assault weapon (former § 12280, subdivision (b) [punishable by 16 months, two or three years]) and admitted that offense was committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1)(A) [punishable by two, three or four years].)[10] Without defense objection, the trial court made the following three sentencing choices:

---

**10** Former section 12280, subdivision (b) was repealed and replaced by section 30605, subdivision (a), which reads: "Any person who, within this state, possesses any assault weapon, except as provided in this chapter, shall be punished by imprisonment in

(1) The three year upper term on the felon in possession conviction based on defendant's prior criminal record. (Cal. Rules of Court, rule 4.421(b)(2).);

(2) The four year upper term for the gang enhancement "because the manner in which the crime was carried out indicates planning, sophistication. Indeed, the defendant was lying in wait before he murdered the victim. . . . [¶] The court also notes the defendant was the – in a position of leadership and indeed led Mr. Santiago in this crime." (Cal. Rules of Court, rule 4.421(a)(4), (8)); and

(3) Consecutive sentences for the murder and felon in possession convictions without stating any reasons.

On appeal, defendant contends he was denied the effective assistance of counsel as a result of trial counsel's failure to object to (1) the trial court's use of facts relating to the murder to impose the upper term on the gang enhancement, and (2) use of the same facts both as a basis for the upper term on the gang enhancement and for consecutive sentences on the murder and the felon in possession charges. We find no error.

To establish ineffective assistance, the defendant must show: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) it is reasonably probable that the verdict would have been more favorable absent counsel's error. " 'If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation.' [Citation.]" (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1052-1053.) In the absence of a sound legal basis for objection, counsel's failure to object cannot establish ineffective assistance of counsel. (*People v. Cudjo* (1993) 6 Cal.4th 585, 616; *People v. Zavala* (2008) 168 Cal.App.4th 772, 780 [no ineffective assistance of counsel for failure to make a futile confrontation clause objection].) As we shall explain, there was no basis for trial counsel to have objected to the sentence in this case.

a county jail for a period not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170." Section 30605 became operative on January 1, 2012.

The aggravating circumstances that may be considered by the court in selecting among the low, middle and upper term are listed in California Rules of Court, rule 4.421. Relevant here are the following:

- "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(a)(1).)
- "The victim was particularly vulnerable." (Cal. Rules of Court, rule 4.421(a)(3).)
- "The defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission." (Cal. Rules of Court, rule 4.421(a)(4).)
- "The manner in which the crime was carried out indicates planning, sophistication, or professionalism." (Cal. Rules of Court, rule 4.421(a)(8).)
- "The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness." (Cal. Rules of Court, rule 4.421(b)(2).)

Any circumstance in aggravation may also be considered in deciding whether to impose concurrent or consecutive terms, but neither an element of the crime nor a fact used to impose the upper term may also be used to impose consecutive sentences. (Cal. Rules of Court, rule 4.425(b).) The existence of a single aggravating factor is sufficient to support a sentencing choice. (*People v. Black* (2007) 41 Cal.4th 799, 813 [selection of upper term]; *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413 [upper term and consecutive sentences].)[11]

Here, the trial court did not err in relying on the planning and leadership factors to select the upper term for the gang enhancement. While the gang enhancement may be proven by evidence that the defendant committed the offense in association with another gang member, the aggravating factor requires more than that. The aggravating factor requires the defendant be the instigator or in a position of leadership. In this case, from the evidence that defendant was in possession of the gun during the several hours he was

---

[11] *Black*, *supra*, was later overruled on other grounds by *Cunningham v. California* (2007) 549 U.S. 270.

14

with Santiago that night, and that he showed Santiago the firearm, the trial court could reasonably conclude that defendant induced Santiago to accompany him as moral support for his continued possession of the firearm as well as the murder.  That Santiago was older than defendant did not require the trial court to conclude that Santiago was the leader.  Additionally, the trial court could conclude that defendant's obtaining a gun in advance indicated planning, sophistication or professionalism.

The trial court did not state its reason for selecting consecutive sentences.  But the "lying in wait" reference (an apparent allusion to the aggravating circumstance of acts disclosing a high degree of cruelty, or callousness), although not factually applicable to the gang enhancement or the felon in possession charge, was a sufficient ground for imposing consecutive sentences, as was the vulnerability of the victim.  On this record, defense counsel was not ineffective in failing to object to the trial court's stated reasons for its sentencing choices.

**DISPOSITION**

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.


15