[No. C055692. Third Dist. Aug. 25, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
THONG HACH, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

**1452**

COUNSEL

Candace Hale, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MORRISON, J.*—When defendant found his common law wife alone with her new lover in a car, he fired a single shot and killed Joshua Chace. A jury convicted him of second degree murder (Pen. Code, § 187)[1] and shooting at an occupied vehicle (§ 246). The jury found true the allegation that defendant personally discharged a firearm, causing death. (§ 12022.53, subd. (d).) The court sentenced defendant to state prison for 40 years to life.

The jury was instructed on alternate theories of second degree murder, both malice aforethought and felony murder with shooting at an occupied vehicle as the predicate felony. Defendant contends the application of the felony-murder rule in this case violated his rights under the Sixth and Fourteenth Amendments of the United States Constitution. He argues that since the merger rule of *People v. Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580] (*Ireland*) precludes application of the felony-murder rule unless defendant has a purpose collateral and independent to assault, and since the evidence of defendant's purpose was conflicting, the trial court erred in failing to instruct the jury that it must find a collateral and independent purpose before it could rely on the felony-murder doctrine. Defendant contends permitting the jury to rely on the felony-murder rule without a jury finding of a collateral purpose violates his right to have the jury determine all factual issues beyond a reasonable doubt.

 After briefing in this case was complete, the California Supreme Court issued its opinion in *People v. Chun* (2009) 45 Cal.4th 1172 [91

---

*Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Hereafter, undesignated statutory references are to the Penal Code.

Cal.Rptr.3d 106, 203 P.3d 425] (*Chun*). In *Chun*, the Supreme Court over-ruled prior decisions and held "that all assaultive-type crimes, such as a violation of section 246, merge with the charged homicide and cannot be the basis for a second degree felony-murder instruction." (*Id.* at p. 1178.) In the published part of the opinion, we find that the trial court erred in instructing on second degree felony murder. However, as in *Chun*, we find the error was harmless and affirm the judgment.

In the unpublished part of the opinion, we reject defendant's contention that his concurrent sentence on shooting at an occupied vehicle should be stayed under section 654 because the act was part of the same conduct as the murder.

## FACTS

Defendant and Savy Yip lived together for over six years, since they were 17. They had two children, but never married. They lived with defendant's mother and brother. Yip's parents lived a house away.

Yip met Joshua Chace on a telephone chat line. After a few weeks, she started talking to him individually and considered him "somewhat" her boyfriend. Yip told Chace the father of her children was "not in the picture."

On August 19, 2005, Chace came to California from Massachusetts to see Yip. Yip told defendant she was going out with friends that night and picked Chace up at the airport. They spent the night together.

When Yip went home the next day, she and defendant got into an argument. She packed her things and went to her mother's. She spent the next four days with Chace.

The night before the incident, Yip returned home and fell asleep. While she was sleeping, Chace called. Defendant answered and Chace told him he was Yip's "man."

When Yip awoke the next afternoon, she and defendant argued. Yip told defendant she did not want to be with him. She left about 6:00 p.m. and went to Chace. They went to a park and talked.

Defendant claimed he was heartbroken and hurt when he found out about Chace. When Yip told him it was over, they argued and defendant said he might do something stupid. After Yip left, defendant waited several hours for her to return. Later that night defendant waved down a friend and got in his Toyota 4Runner with a gun; he wanted to bring Yip home. They went to four or five parks before they found Yip.

Around midnight, Yip and Chace were at Laughlin Park in the car with the seats reclined. Yip was in the driver's seat and Chace in the passenger seat. Yip saw headlights coming from behind. A car stopped in the middle of the road, about 15 feet away.

Defendant got out of the passenger side of the car. He had a gun in his hand and went to the driver's side of Yip's car. He tapped the windshield with the gun and yelled, " 'get out.' " Yip said " 'no' " and " 'don't shoot.' " Defendant started walking around the back of the car. Yip started the car. Chace told defendant he did not want any problems, and told Yip, " 'just go, just go.' " Yip took off and made a U-turn. As she turned, she heard a shot.

Yip kept driving. She noticed Chace was quiet and then heard him gasping for air; he did not move. She drove to the hospital. Chace died from a gunshot wound to the head.

Defendant told the detective who interviewed him that he shot to scare Chace. At trial he testified he had the gun—an SKS rifle—below his waist. He ran after the car and shot in the air; he shot because he was angry and was not aiming. He was 10 feet from the car when he fired. On cross-examination, he testified "I shoot the gun in the air to lose my anger. I told the detective I tried to scare him. That is all."

## DISCUSSION

### I. Instructing on Second Degree Felony Murder Was Error, but Not Prejudicial

Defendant contends that where, as here, second degree felony murder is based on shooting at an occupied vehicle, the merger rule of *Ireland, supra,* 70 Cal.2d 522, requires the trier of fact to find beyond a reasonable doubt that defendant had a purpose in shooting that was independent of and collateral to assault. He contends that since the jury did not make the finding of an independent collateral purpose, his Sixth and Fourteenth Amendment rights to have the jury decide factual questions that affected his sentence or the degree of crime were violated. Finally, he asserts that since the jury was instructed

on both murder with malice aforethought and felony murder, and it cannot be determined on which theory the jury relied, reversal is required.

The Attorney General agrees that a collateral purpose is required in this case for application of second degree felony murder. He asserts, however, that defendant's testimony that he fired over the car to scare Chace provided the necessary evidence of that collateral purpose. The Attorney General rejects the argument that the jury had to find the collateral purpose. "It is the trial court, not the jury, that decides which legal theories are warranted by the evidence."

After briefing in this case was complete, the California Supreme Court issued its opinion in *Chun, supra,* 45 Cal.4th 1172, which substantially altered the law on second degree felony murder. We requested supplemental briefing from the parties on the effect of *Chun* on this case.

In *Chun,* the 16-year-old defendant and three other gang members were in a Honda stopped at a streetlight. Gunfire erupted from the Honda toward a stopped Mitsubishi, killing a passenger and wounding two others. (*Chun, supra,* 45 Cal.4th at p. 1179.) The defendant was tried as an adult and charged with murder, two counts of attempted murder, shooting at an occupied vehicle, and discharging a firearm from a vehicle, all with gang and firearm-use allegations, and street terrorism. (*Ibid.*)

Although the prosecution sought a first degree murder conviction, the court also instructed the jury on second degree felony murder based on shooting at an occupied motor vehicle (§ 246) either directly or as an aider and abettor. The jury returned a verdict of second degree murder. It found the personal use allegation not true, but found a principal intentionally used a firearm and the shooting was for the benefit of a criminal street gang. The jury acquitted the defendant of both counts of attempted murder, shooting from a vehicle and shooting at an occupied motor vehicle. The defendant was convicted of being an active participant in a criminal street gang. (*Chun, supra,* 45 Cal.4th at pp. 1179–1180.)

The California Supreme Court granted review to determine if the trial court prejudicially erred in instructing on second degree felony murder. (*Chun, supra,* 45 Cal.4th at p. 1180.)

█ First, the Supreme Court addressed the defendant's claim that second degree felony murder violates separation of powers as a judicially created doctrine with no statutory basis. (*Chun, supra,* 45 Cal.4th at p. 1183.) The court held that the " 'abandoned and malignant heart' " language of section 188 contains within it the common law second degree murder rule. (*Chun,*

*supra*, at p. 1187.) Second degree felony murder is based on statute and "stands on firm constitutional ground." (*Id.* at p. 1188.)

█ The court then considered the effect of the merger rule of *Ireland, supra*, 70 Cal.2d 522. After reviewing the court's jurisprudence in this area, the court held the state of the law regarding the *Ireland* merger doctrine was problematic, and found it necessary "to reconsider our merger doctrine jurisprudence." (*Chun, supra*, 45 Cal.4th at p. 1198.) Disapproving prior decisions, the court set forth a different test of merger. "When the underlying felony is assaultive in nature, such as a violation of section 246 or 246.3, we now conclude that the felony merges with the homicide and cannot be the basis of a felony-murder instruction." (*Chun, supra*, at p. 1200.) Although the court declined to determine "exactly what felonies are assaultive in nature," it held that "shooting at an occupied vehicle under section 246 is assaultive in nature and hence cannot serve as the underlying felony for purposes of the felony-murder rule." (*Ibid.*, fn. omitted.)

Here the trial court instructed on felony murder with shooting at an occupied vehicle as the predicate felony. Under *Chun*, this instruction was error.

To determine whether the error was prejudicial, we again look to *Chun*. The *Chun* court first noted that although the jury was not given specific instructions on implied malice second degree murder, CALJIC Nos. 8.30 and 8.31, the other instructions were sufficient to base a second degree murder conviction on either malice or felony murder. (*Chun, supra*, 45 Cal.4th at pp. 1202–1203.) Here the trial court fully instructed the jury on second degree murder under either implied malice or felony murder theories.[2]

In determining whether the instructional error was prejudicial, the *Chun* court relied on a test set forth by Justice Scalia in a concurring opinion in *California v. Roy* (1996) 519 U.S. 2 [136 L.E.2d 266, 117 S.Ct. 337]. In *Roy*, the error was permitting a defendant to be convicted of a crime as an aider and abettor solely due to his knowledge of the crime, without requiring a finding he shared the perpetrator's intent. The *Chun* court found this error similar to that in the case at hand, where the defendant could be convicted of felony murder without requiring a finding of a valid theory of malice. (*Chun, supra*, 45 Cal.4th at p. 1204.) In his concurring opinion in *Roy*, Justice Scalia stated the test for prejudice thusly: "The error in the present case can be harmless only if the jury verdict on other points effectively embraces this one or if it is impossible, upon the evidence, to have found what the verdict did

---

[2] The *Chun* court referred to implied malice as " 'conscious-disregard-for-life malice.' " (*Chun, supra*, 45 Cal.4th at p. 1181, fn. 2.)

find without finding this point as well." (*Roy, supra,* 519 U.S. at p. 7 (conc. opn. of Scalia, J.), italics omitted.) The *Chun* court found this test worked well for an improper instruction on second degree felony murder. "If other aspects of the verdict or the evidence leave no reasonable doubt that the jury made the findings necessary for conscious-disregard-for-life malice, the erroneous felony-murder instruction was harmless." (*Chun, supra,* at p. 1205.)

Applying this test, the court found any juror who relied on felony murder "necessarily found that defendant willfully shot at an occupied vehicle." (*Chun, supra,* 45 Cal.4th at p. 1205.) The undisputed evidence was that three people in the car were hit by multiple gunshots fired at close range. The *Chun* court concluded: "No juror could have found that defendant participated in this shooting, either as a shooter or as an aider and abettor, without also finding that defendant committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life—which is a valid theory of malice. In other words, on this evidence, no juror could find felony murder without also finding conscious-disregard-for-life malice. The error in instructing the jury on felony murder was, by itself, harmless beyond a reasonable doubt." (*Ibid.*)

Defendant argues the facts of this case are distinguishable and do not compel a conclusion that the jury found malice. Here defendant acted alone—from personal, not gang, motives—and fired only once. Defendant contends his actions show only a conscious indifference to the possibility of death, not the conscious disregard for life required for implied malice. Defendant relies on cases involving shooting at an inhabited dwelling, which hold an intent to strike the building is not required, only a reckless disregard or conscious indifference to the probable consequences. (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433 [45 Cal.Rptr.2d 148]; *People v. Chavira* (1970) 3 Cal.App.3d 988, 993 [83 Cal.Rptr. 851].)

We find the harmless error analysis of *Chun* applicable. To find defendant guilty of second degree felony murder, a juror must have found he willfully shot at an occupied vehicle. Indeed, we know the jury so found because, unlike in *Chun,* the jury convicted defendant of violating section 246. The factual distinctions from *Chun* are not significant. Defendant was only 10 feet away from the car and knew there were two people in it. He fired an SKS rifle directly into the car. As in *Chun,* the jury must have found defendant committed an act that is dangerous to life, knew of the danger, and acted with conscious disregard for life. In other words, the jury found defendant acted with implied malice. Accordingly, as in *Chun,* the error in instructing on second degree felony murder was harmless beyond a reasonable doubt.

One distinction from *Chun* is that the jury in this case was instructed on voluntary manslaughter. Therefore, we consider whether the error in instructing on second degree felony murder was not harmless because its effect was to remove from the case defendant's defense of heat of passion provocation to reduce the killing to manslaughter. In denying defendant's motion for a new trial, the trial court noted the "problem" with felony murder is that it does not permit mitigation to manslaughter.

Here the trial court instructed the jury on heat of passion manslaughter. The defense argued the killing was provoked by heat of passion. The jury, however, was instructed: "Provocation does not apply to a prosecution under a theory of felony murder."

■ We find defendant's heat of passion defense does not render the instruction on felony murder prejudicial because the facts of this case are inadequate to reduce the killing to manslaughter as a matter of law.

■ Voluntary manslaughter is an unlawful killing without malice "upon a sudden quarrel or heat of passion." (§ 192, subd. (a).) "Heat of passion arises when 'at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment.' [Citations.]" (*People v. Barton* (1995) 12 Cal.4th 186, 201 [47 Cal.Rptr.2d 569, 906 P.2d 531].) "[T]he killing must be 'upon a sudden quarrel or heat of passion' (§ 192); that is, 'suddenly as a response to the provocation, and not belatedly as revenge or punishment. Hence, the rule is that, if sufficient time has ela[ps]ed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter.' [Citation.]" (*People v. Daniels* (1991) 52 Cal.3d 815, 868 [277 Cal.Rptr. 122, 802 P.2d 906].)

Here there was no "sudden quarrel or heat of passion." Defendant fired after Yip refused his instruction to get out of the car. Rather than provoking defendant, Yip begged him not to shoot and Chace told defendant he did not want any problems.

To be sure, there was quarreling and defendant's passion was aroused, but this provocation occurred over several days. Defendant and Yip quarreled days before the shooting, and she left him and went to Chace. The night before the killing, defendant spoke with Chace, who told defendant he was Yip's "man." Defendant and Yip quarreled again the next afternoon and she left about 6:00 p.m. Defendant waited several hours for her to return. When she did not, he got a ride from a friend and searched several parks looking for her. When he found her, he shot Chace.

This smoldering jealousy leading to a fatal act is similar to that in *People v. Hudgins* (1967) 252 Cal.App.2d 174 [60 Cal.Rptr. 176], where the defendant, consumed with jealousy, beat and threatened his wife. He broke into a house and shot the man he believed was his wife's paramour. The court found no evidence to support an instruction on heat of passion manslaughter. "There was no evidence of a sudden quarrel, but only proof of a violent attack by an armed man upon one who was unarmed and who made a futile attempt to save his own life. There was no sudden heat of passion, but only evidence of a persistent, brooding jealousy which spurred appellant to a decision to arm himself and lie in wait for a victim. All the evidence indicated it was not a sudden, impetuous decision, acted upon without time and opportunity for reflection and the cooling off of suddenly aroused emotion. It was a decision reached after long deliberation and meditation, and careful preparation to carry into execution the threats appellant had repeatedly uttered. Upon these facts the killing was not manslaughter; it was, at the least, murder of the second degree." (*Id.* at p. 181.)

Defendant had sufficient time to cool down after his quarrel with Yip the afternoon of the shooting. (*People v. Middleton* (1997) 52 Cal.App.4th 19, 34 [60 Cal.Rptr.2d 366], disapproved on another ground in *People v. Gonzalez* (2003) 31 Cal.4th 745, 752, fn. 3 [3 Cal.Rptr.3d 676, 74 P.3d 771].) In *Middleton*, the defendant incapacitated his attacker and could have fled on foot or called the police. Instead, he chose to return and get his gun. He then shot the attacker. The court found no substantial evidence of provocation. "His return from the doorway represented a distinct and divisible event in the sequence of events and provided him sufficient time to 'cool down.' '[I]f sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary man- slaughter—"the assailant must act under the smart of that sudden quarrel or heat of passion." [Citation.]' [Citation.]" (*Middleton, supra,* 52 Cal.App.4th at p. 34.)

There was insufficient evidence of heat of passion manslaughter. The trial court's error in instructing on second degree felony murder was harmless beyond a reasonable doubt.

## II. Section 654: Sentence on Count 3 Need Not Be Stayed*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1450.

## DISPOSITION

The judgment is affirmed.

Butz, Acting P. J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 2, 2009, S176843.