Filed 6/9/22  P. v. Goodwin CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ZACHERY WILLIAM DAVID GOODWIN,<br><br>　　　Defendant and Appellant. | F079655<br><br>(Super. Ct. No. F16900408)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING (CHANGE IN JUDGMENT)** |

**THE COURT:**

It is ordered that the opinion filed herein on May 17, 2022, be modified in the following particulars:

1.  The Conclusion on page 18 is deleted and the following is inserted:

### CONCLUSION

The conviction on Count 1 (§ 187) is reversed, and the firearm enhancements are vacated.  The People may retry this count and the enhancements. The convictions on Count 2 (§664/211) and Count 3 (§ 246), and the firearm enhancements thereon, are affirmed. The sentences on Counts

**SEE CONCURRING AND DISSENTING OPINION**

2 and 3 are vacated, subject to a full sentencing rehearing following resolution on Count 1.

2. The Disposition on page 18 is deleted and the following is inserted:

## **DISPOSITION**

The conviction on Count 1 is reversed, and the firearm enhancements on Count 1 are vacated. The convictions on Counts 2 and 3 are affirmed, but the sentences on Counts 2 and 3 are vacated, subject to a full resentencing hearing. The case is remanded for further proceedings consistent with this opinion.

This modification changes the judgment. Appellant's petition for rehearing is denied.

SNAUFFER, J.

WE CONCUR:

DETJEN, Acting P. J.

SMITH, J.

2.

Filed 5/17/22  P. v. Goodwin CA5 (unmodified opinion)
(see concurring & dissenting opinion)


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZACHERY WILLIAM DAVID GOODWIN,<br><br>    Defendant and Appellant. | F079655<br><br>(Super. Ct. No. F16900408)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ross K. Naughton, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Zachery Goodwin was charged with murder, attempted robbery, and shooting at an occupied vehicle after he shot and killed a man in a vehicle during an attempted robbery gone wrong.  At the trial, jurors were instructed on second degree murder with

**SEE CONCURRING AND DISSENTING OPINION**

two alternate theories: implied malice or felony murder based on shooting at an occupied vehicle.[1]

The jury found Goodwin guilty of second degree murder but did not specify the murder theory it relied upon. It also found him guilty of the remaining charges.

On appeal, Goodwin raises several claims separately challenging the convictions and the resulting sentence. Most of these claims lack merit, but one demands closer inspection. Goodwin claims the court prejudicially erred in its instructions because felony murder was improperly predicated on shooting at an occupied vehicle. The People concede the error but argue it is harmless.

Our review of the record compels us to find the error prejudicial. Accordingly, we will reverse the judgment and the murder conviction due to the erroneous jury instructions.[2]

## BACKGROUND

**Charges**

The Fresno County District Attorney charged Goodwin with committing three crimes: murder (Pen. Code,[3] § 187), attempted robbery (§ 664/211), and shooting at an occupied vehicle (§ 246). Each charge included firearm enhancements (§§ 12022.53, subd. (d) & 12022.5, subd. (a)).

**Trial Evidence**

According to two juveniles, A. and I., Goodwin planned a robbery with them and a fourth juvenile. I. knew Goodwin was armed with a firearm.

---

[1] Goodwin was acquitted of first degree felony murder, i.e., homicide during an attempted robbery.

[2] We do not reach the sentencing claims because they are technically mooted by the decision to reverse the murder conviction.

[3] All statutory references are to the Penal Code.

2.

The plan was to use A., who was working as a prostitute, to lure an unsuspecting customer into a robbery. Sure enough, the victim arrived in his vehicle ready to transact with A. As A. approached and entered the vehicle, Goodwin followed behind. At this point, A. knew Goodwin was armed with a firearm.

Goodwin used the firearm to tap on the driver's window. The victim began driving away. Goodwin fired four shots, hitting the victim three times. The victim later died at a hospital.

Meanwhile, Goodwin fled on foot. A few minutes later, a law enforcement officer saw Goodwin enter a nearby residential building.[4] Law enforcement remained on scene outside the building for several hours until Goodwin was taken into custody.

A firearm was found behind the building near the property's fence line. It matched the bullets that killed the victim. Goodwin's fingerprint was on the weapon's magazine, gunshot residue was on his hands, and both A. and I. identified Goodwin as the shooter before trial and at trial.

**Verdict and Sentence**

Goodwin was convicted of second degree murder, attempted robbery, and shooting at an occupied vehicle. The firearm enhancements were found true. He was sentenced to serve 40 years to life in prison.

## DISCUSSION

Goodwin raises numerous claims on appeal. First, did the prosecutor commit error by bolstering juvenile A.'s testimony with reference to facts outside the record? Second, did the evidence sufficiently prove robbery? Third, did the court fail to fully instruct the

---

[4] A 911 caller "advised" he witnessed the shooting, saw "three juveniles wearing a gray hoodie and some backpacks," and provided their last known location.

jury on witness-corroboration law?  Fourth, were the court's second degree murder instructions prejudicial error?[5]

The People oppose all relief.  We agree with the People on each point except for the second degree murder instructions.  As discussed below, those instructions were erroneous, prejudicial, and necessitate reversal.

## I.  No Prosecutorial Error

Goodwin alleges "[t]he prosecutor erred in this case by vouching for the reliability of [A.'s] identification of [him] with reference to inadmissible evidence which was not introduced at trial, and which—as a matter of law—could not corroborate" either juvenile's testimony.  The People claim the argument is forfeited, the prosecutor did not err, and, if there was error, it was "much too minor to have materially affected deliberations …."

We address the issue on the merits because Goodwin anchors it to an ineffective assistance of counsel claim.  We conclude the prosecutor did not err.

### A.  Additional Background

At trial, A. testified she was "a hundred percent positive" Goodwin was the shooter.  She acknowledged she gave multiple interviews to law enforcement prior to trial.  In one of the first interviews, A. described Goodwin and then identified him as the

---

[5] As noted, Goodwin's sentencing claims are mooted by the disposition.  We do not recite or discuss those claims.

shooter at a show-up.[6]  Goodwin challenged A.'s identifications of him by exposing her limited vision[7] and undermining the efficacy of the show-up.[8]

In closing argument, the prosecutor informed the jury, "[Y]ou did not see [A.'s] video interview and there's a reason for that.  …  I did not show [her] interview because she was testifying and her statements were consistent, so you did not see her video interview."[9]  The prosecutor later stated, "[A.]'s I.D.'d the same person as the shooter over, and over, and over again.  She's never changed that conclusion and she did not change that conclusion in front of you."

**B. Analysis**

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.  [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667 (*Centeno*).)  "To establish such error, bad faith on the prosecutor's part is not required." (*Id.* at p. 666.)  "In the absence of prejudice to the fairness of a trial, a prosecutor's errant remarks do not require reversal." (*People v. Dworak* (2021) 11 Cal.5th 881, 914 (*Dworak*).)

---

[6] A show-up is an identification procedure where law enforcement display an actual detained suspect to a person and ask, " 'Is this the guy that did it?' "

[7] For example, A. was unable to clearly see defense counsel's face approximately 14 feet away.

[8] Goodwin pointed out the show-up was conducted at "headquarters" and involved him as the sole suspect, increasing the likelihood of misidentification.  It was also revealed A. hesitated in her identification at the show-up.

[9] The prosecutor offered this information to explain why I.'s video interview was introduced in evidence as an inconsistent statement but A.'s video interview was not.

" 'A prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record.' " (*People v. Wright* (2021) 12 Cal.5th 419, 446 (*Wright*).) " 'However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the "facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief," [the prosecutor's] comments cannot be characterized as improper vouching.' " (*Id.* at pp. 446—447.) "We 'view the statements in the context of the argument as a whole.' " (*People v. Rodriguez* (2020) 9 Cal.5th 474, 480.)

Here, the prosecutor's argument was not improper.[10] The fact A. provided multiple interviews before trial was in evidence. The fact she had described and identified Goodwin before trial was in evidence. Put simply, the facts A. was previously interviewed by law enforcement and had identified Goodwin as the shooter prior to trial were not references to evidence outside the record, let alone improper vouching. (*Wright, supra,* 12 Cal.5th at pp. 446—447.)

To be fair, the fact A.'s interview was *videotaped* is a fact outside the record.[11] But, in our view, that adds little, if anything, to Goodwin's claim. To the extent Goodwin

---

[10] "As a general rule, ' "[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." ' [Citation.] The defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct." (*Centeno, supra,* 60 Cal.4th at p. 674.)

We note "[n]othing in this record indicates that an objection would have been futile. Nor was the prosecutor's argument so extreme or pervasive that a prompt objection and admonition would not have cured the harm." (*Centeno, supra,* 60 Cal.4th at p. 674.) Ordinarily, this would forfeit the issue. (See *ibid.*) But we choose to address the claim on its merits. (See *People v. Lua* (2017) 10 Cal.App.5th 1004, 1014.)

[11] The jury did know one law enforcement officer recorded "all" of his "interaction" with A. But the jury did not know it was a video recording. That

6.

argues the prosecutor urged the jury to find A.'s testimony was corroborated by her own prior statements, we disagree. The prosecutor's prior-consistency argument did not relate to section 1111's corroboration requirement and the prosecutor did not otherwise urge the jury to use it in that manner.[12] We will not infer the jury nonetheless used A.'s prior identification at the show-up as legal corroboration. (See *Centeno, supra,* 60 Cal.4th at p. 667.)

In sum, A. identified Goodwin as the shooter before trial and at trial. The prosecutor told the jury she unwaveringly identified Goodwin "over, and over, and over again." That was not improper vouching because it was based on the record.[13] Because there was no improper vouching, Goodwin's trial counsel could not have been ineffective relative to the prosecutor's prior-consistency argument. (*People v. Bell* (2019) 7 Cal.5th 70, 125 [deficient performance is a prerequisite to proving an ineffective assistance claim].) The prosecutorial error claim fails.

## II. Robbery Sufficiently Proven

Section 1111 prohibits a conviction based on the uncorroborated testimony of an accomplice. The trial court here appropriately instructed the jury A. and I. were

---

"interaction" resulted in a 39-page transcript in which A. described the shooter. After providing the description, she identified Goodwin as the shooter at a show-up.

The video, of course, was not played for the jury. Based on the record, it is unknown whether the show-up was also recorded and included in the 39-page transcript. The transcript was not provided to the jury or otherwise placed in the record. It is, however, reasonable to infer the show-up was recorded as part of the interaction.

[12] It is unclear why Goodwin connects this portion of the prosecutor's argument to the section 1111 corroboration law. Immediately after stating A. gave a prior videotaped interview, the prosecutor told the jury it must corroborate her testimony and offered the gunshot residue and fingerprint evidence as examples of corroboration.

[13] To summarize, the jury heard A. identify Goodwin as the shooter multiple times at trial, learned A. identified Goodwin as the shooter prior to trial, and watched her resist attempts to undermine her identification and credibility. These facts are consistent with the prosecutor's argument.

accomplices to attempted robbery. Accordingly, it was necessary for the prosecutor to corroborate A.'s and I.'s testimony.

In challenging the attempted robbery conviction, Goodwin asserts "there is not one shred of evidence any robbery was attempted other than the uncorroborated" testimony of A. and I. The People oppose the claim, arguing it was unnecessary to specifically corroborate robbery. We agree with the People.

Section 1111 provides in part: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."[14] "[T]he corroboration must connect the defendant to the crime *independent* of the accomplice's testimony." (*People v. Romero and Self* (2015) 62 Cal.4th 1, 36.) It need not, however, "corroborate every fact to which the accomplice testifies [citation], and ' " may be circumstantial or slight and entitled to little consideration when standing alone …." ' " (*Id.* at p. 32.)

" ' " '[I]t is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged ….' " ' " (*People v. Williams* (2013) 56 Cal.4th 630, 678 (*Williams*).) Corroboration " 'is "sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth." ' " (*Id.* at p. 679.)

The corroboration standard is clearly met in this case. Although we agree there is no independent evidence of a specific intent to commit robbery, there is evidence Goodwin attempted to use force or fear consistent with robbery, i.e., tapping on the

---

**14** Although not at issue, we note testimony within the meaning of section 1111 includes out-of-court statements made to law enforcement investigators. (*People v. Hoyt* (2020) 8 Cal.5th 892, 946.)

8.

driver's window with a firearm.[15] The fact Goodwin was the perpetrator is corroborated by these facts: (1) the perpetrator fired the weapon, killing the victim; (2) Goodwin was seen near the shooting with suspects a few minutes later; (3) Goodwin was taken into custody near the firearm; (4) Goodwin's fingerprint was on the firearm's magazine; and (5) Goodwin had gunshot residue on his hands. These facts more than sufficed to satisfy the jury the accomplices were telling the truth about the planned robbery. No more was required. (*Williams, supra,* 56 Cal.4th at pp. 678—679.)

## III. Incomplete Corroboration Instructions Were Not Prejudicial

In a somewhat related claim, Goodwin complains the court erred in its instructions to the jury by not declaring A. and I. were accomplices to murder and shooting at an occupied vehicle, or at least submitting the question to the jury. The People argue the claim is forfeited and otherwise any error is harmless.

We address the issue on the merits because Goodwin supplements it with an ineffective assistance claim. We conclude any error in these instructions was not prejudicial.

### A. Additional Background

In the midst of trial, Goodwin filed a written request for jury instructions including CALCRIM Nos. 334 and 335. CALCRIM No. 334 explains the accomplice corroboration requirement when a witness's accomplice status is disputed. CALCRIM No. 335 applies when accomplice status is undisputed. The written request did not indicate to which crimes Goodwin sought to apply the instructions.

About one week later, the court held an "informal conference" about jury instructions. The court explained the "informal conference" was "a real informal conversation about the instructions so that [it could] have guidance in final edits." It

---

[15] "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)

added, "[e]verything … will be memorialized in a formal conference that will be on the record and it will be in written form at the conclusion of the case …." A few days later, the court acknowledged CALCRIM No. 335 was "edited" during the informal conference.

Eventually, there was a subsequent, more formal discussion of jury instructions. But no accomplice instructions were discussed.

Ultimately, the court instructed the jury with CALCRIM No. 335. As relevant, the instruction stated, "If the crime of Attempted Robbery was committed, then [I.] and [A.] were accomplices to that crime. [¶] You may not convict the defendant of Attempted Robbery based on the statement or testimony of an accomplice alone." CALCRIM No. 334 was left blank and filed under instructions not given.

**B. Analysis**

The section 1111 corroboration requirement applies to any witness "who is liable to prosecution for the identical offense charged against the defendant on trial …." (§ 1111.) " 'To be chargeable with an identical offense, a witness must be considered a principal under section 31.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1155 (*Johnsen*).) "In other words, there must be evidence of that person's 'guilt … based on a combination of the direct perpetrator's acts and the aider and abettor's own acts and own mental state.' " (*Ibid.*) "[T]he trial court instruct[s] on 'the principles regarding accomplice testimony' " "when there is 'substantial evidence that a witness who has implicated the defendant was an accomplice ….' " (*Ibid.*)

" '[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.' [Citation.] Furthermore, under the 'natural and probable consequences' doctrine, an aider and abettor is guilty not only of the offense he or she intended to facilitate or

10.

encourage, but also any reasonably foreseeable offense committed by the person he or she aids and abets." (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295—296.)

While we might agree the court should have instructed the jury A. and I. were accomplices to all crimes, we need not decide the issue because any error is harmless.[16] As discussed *ante*, the jury properly found the attempted robbery corroborated by independent evidence. Because the crimes in this case were committed essentially without distinction, the same evidence corroborating robbery corroborated the other crimes, too. There is no doubt the jury made the requisite corroboration findings because it necessarily did so with reference to the attempted robbery. Accordingly, any error in the instructions was harmless.[17]

## IV. Improper Second Degree Murder Instructions Were Prejudicial

The jury in this case was instructed second degree murder was provable either under a malice or felony-murder theory. Malice itself was divided into two categories – express and implied. Implied malice was defined as "intentionally commit[ing] an act" "[t]he natural and probable consequences of [which are] dangerous to human life," and "deliberately act[ing] with conscious disregard for life" while knowing the "act was dangerous to human life …."

---

[16] To be clear, at the time of these offenses, accomplices were still liable for murder under the natural and probable consequences doctrine. Both A. and I. knew Goodwin was armed with a firearm prior to his actual attempt to rob the victim. Although not dispositive, both A. and I. were charged with murder but settled their cases prior to Goodwin's trial. It appears, at a minimum, the court should have submitted the accomplice question to the jury via CALCRIM No. 334.

[17] Because any error was harmless, there can be no ineffective assistance of counsel. In any event, the record is not clear enough for us to conclude counsel did not request CALCRIM No. 334 in connection to murder and shooting at an occupied vehicle. (See *Centeno, supra,* 60 Cal.4th at p. 675 ["When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was ' " 'no conceivable tactical purpose' " ' for counsel's act or omission.' "].) Were we to reach the issue, we would not find counsel ineffective.

11.

Felony murder was based on shooting at an occupied vehicle. The instruction explained committing shooting at an occupied vehicle, intending to commit shooting at an occupied vehicle, and causing death equaled second degree murder.

Goodwin claims "[t]he trial court erred in permitting the jury to find [him] guilty of second-degree murder on a felony-murder theory because the merger doctrine applied to preclude[] a murder conviction based on an underlying assaultive felony." The People concede the error but dispute prejudice.

We agree the court erred. The more difficult question is whether the error is prejudicial or harmless. After careful examination, we cannot conclude the error here was harmless.

"[S]hooting at an occupied vehicle … cannot serve as the underlying felony for purposes of the felony-murder rule." (*People v. Chun* (2009) 45 Cal.4th 1172, 1200 (*Chun*).) Because it did serve as the underlying felony for purposes of the felony-murder rule in this case, the instructions were clearly erroneous. "[W]hen a court instructs on two theories of guilt, one correct and the other incorrect," it commits alternative-theory error. (*People v. Aledamat* (2019) 8 Cal.5th 1, 7 & fn. 3 (*Aledamat*).)

In alternative-theory error cases, "[t]he reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*Aledamat, supra,* 8 Cal.5th at p. 13.) In harmless-beyond-a-reasonable-doubt analysis, we consider not what effect the "error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. … The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered— no matter how inescapable the findings to support that verdict might be—would violate

12.

the jury-trial guarantee." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279 (*Sullivan*).) " ' "To say that an error did not contribute to the ensuing verdict is ... to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 463 (*Pearson*).)

Our concern with the error in this case is that Goodwin may have been convicted of murder without the jury finding he acted with malice. This is particularly so as the only valid theory to prove murder in this case required the jury to find implied malice.[18] Because felony murder renders it unnecessary to "further examin[e] the defendant's mental state" (*Chun, supra,* 45 Cal.4th at p. 1182), there exists a real possibility this jury never considered implied malice.

" 'Implied malice requires that the defendant act with a wanton disregard for the high probability of death [citation], thereby requiring a *subjective awareness* of a high degree of risk [citation]. It is not enough that a *reasonable person* would have been aware of the risk.' " (*In re Hansen* (2014) 227 Cal.App.4th 906, 923; *People v. Cravens* (2012) 53 Cal.4th 500, 507.)

Felony murder, on the other hand, "renders irrelevant *conscious-disregard-for-life* malice ...." (*Chun, supra,* 45 Cal.4th at p. 1184.) "[T]he felony-murder rule 'acts as a substitute' for conscious-disregard-for-life malice. [Citation.] It simply describes a different form of malice under section 188." (*Ibid.*; *People v. Dillon* (1983) 34 Cal.3d 441, 475 ["[i]n every case of murder other than felony murder the prosecution undoubtedly has the burden of proving malice as an element of the crime." ].) That different form of malice, while sufficient to prove felony-murder, does not prove implied malice murder, i.e., a subjective, conscious disregard for life.

Nonetheless, "the erroneous felony-murder instruction [is] harmless" "[i]f other aspects of the verdict or the evidence leave no reasonable doubt that the jury made the

---

[18] There was no evidence or argument related to express malice.

findings necessary for conscious-disregard-for-life malice ….” (*Chun, supra,* 45 Cal.4th at p. 1205.) To illustrate, a common example eliminating doubt as to an error's prejudice is a special circumstance finding. (See *Pearson, supra,* 53 Cal.4th at pp. 319—320 [alternative-theory error harmless because special circumstance finding meant “jury necessarily convicted … on other, proper … theories.”].)

Evidence in the record proving an error harmless need not, however, appear on the face of the verdict. For example, when each party's argument, the evidentiary presentation to the jury, and the jury's inquiries to court all focus on a valid theory to the exclusion of an invalid theory, we may properly find an alternative-theory error harmless beyond a reasonable doubt. (See, e.g., *People v. Westerfield* (2019) 6 Cal.5th 632, 715—717 [possible instructional error harmless based on evidence and defense at trial].)

The record in this case, however, sheds no light on the jury's deliberations. If anything, it suggests the jury *did* incorrectly rely on felony murder because it also found Goodwin guilty of the underlying felony—shooting at an occupied vehicle. There is simply nothing to base a beyond-a-reasonable-doubt conclusion the jury found the implied malice necessary to legally prove second degree murder in this case.

In *Chun, supra,* the Supreme Court did find an identical alternative-theory error harmless beyond a reasonable doubt under admittedly similar circumstances. There, the defendant along with others were in one vehicle, they “pulled up beside” a second vehicle, and then “gunfire erupted from the [first vehicle], hitting all three occupants of the” second vehicle. (*Chun, supra,* 45 Cal.4th at pp. 1178—1179.) One person was killed. (*Id.* at p. 1179.) The jury was instructed “on second degree felony murder based on shooting at an occupied motor vehicle,” and subsequently found the “defendant guilty of second degree murder.” (*Ibid.*)

After holding the second degree felony murder instruction was precluded by the merger doctrine (*Chun, supra,* 45 Cal.4th at p. 1200), the Supreme Court assessed prejudice. It found the court's felony murder instructions explained the jury must find

14.

the defendant specifically intended to commit shooting at an occupied vehicle, which in turn required willfully and maliciously discharging a firearm.[19]  (*Id.* at p. 1205.)

Based on these instructions, the Supreme Court concluded,

> "Thus any juror who relied on the felony-murder rule
> necessarily found that defendant willfully shot at an occupied
> vehicle.  The undisputed evidence showed that the vehicle
> shot at was occupied by not one but three persons.  The three
> were hit by multiple gunshots fired at close range from three
> different firearms.  No juror could have found that defendant
> participated in this shooting, either as a shooter or as an aider
> and abettor, without also finding that defendant committed an
> act that is dangerous to life and did so knowing of the danger
> and with conscious disregard for life—which is a valid theory
> of malice.  In other words, on this evidence, no juror could
> find felony murder without also finding conscious-disregard-
> for-life malice.  The error in instructing the jury on felony
> murder was, by itself, harmless beyond a reasonable doubt."
> (*Chun, supra,* 45 Cal.4th at p. 1205.)

The Court also recognized "the jury *acquitted* defendant of the separately charged underlying crime of shooting at an occupied vehicle," and this anomaly "strongly suggest[ed] the jury based its murder conviction on a valid theory of malice …."  (*Id.* at pp. 1203—1204.)  Elsewhere, the court noted the prosecutor discussed "what implied malice is and included examples."[20]  (*Id.* at p. 1203.)

This case is different.  Importantly, in *Chun, supra,* there was little doubt a motive behind the shooting was intent to kill.  (See *In re Lucero* (2011) 200 Cal.App.4th 38, 47 (*Lucero*) ["*Chun* involved a typical driveby shooting."].)  In contrast, the evidence here suggested Goodwin solely intended to commit robbery.  It is far from clear how shooting

---

[19] Malice in this sense means acting with "intent to disturb, annoy, or injure someone else."  It is distinct from conscious-disregard-for-life malice.

[20] This notation was relevant due to the fact the trial court in *Chun, supra,* did not "precisely" instruct the jury on second degree implied malice murder.  (*Chun, supra,* 45 Cal.4th at pp. 1202—1203.)

15.

at a vehicle as it drives away aids in that intent.  In other words, it is not ironclad Goodwin fully appreciated the risk in his actions because it is not clear *why* he started shooting.**21**  We also note, in contrast to *Chun, supra,* the prosecutor's argument here relative to implied malice consists of a few lines in the reporter's transcript and, frankly, misstates the law by omitting reference to the subjective component of implied malice.**22**  (CALCRIM No. 520 [implied malice requires actual knowledge of lethal action and deliberate, conscious disregard for life].)

Notably, the evidence adduced at trial to prove implied malice was purely circumstantial.**23**  (See *People v. Jimenez* (2015) 242 Cal.App.4th 1337, 1358 [" 'It is unnecessary that implied malice be proven by an admission or other direct evidence of the defendant's mental state; like all other elements of a crime, implied malice may be proven by circumstantial evidence.' "].)  But even if we agree—and we do agree— commonsense dictates firing bullets into an occupied vehicle at close range is dangerous to life, to find implied malice the jury was still tasked with finding Goodwin's *subjective*

---

**21** In this regard, to find Goodwin guilty of shooting at an occupied vehicle, the jury was instructed it must find an "intent to disturb, annoy, or injure someone else." These alternate intents are not necessarily inclusive of a subjective awareness of danger.

**22** The prosecutor's entire implied malice murder argument follows:  "Also, he's guilty under second-degree murder under instruction 520, which talks about implied malice.  And implied malice is simply an act that is dangerous to human life and he's guilty of that as well because he walked up to the driver's side of the door and unloaded four shots into a vehicle with two people inside striking [the victim] three times.  That's proved as well."  The argument omits the very subjective element giving us pause.  It is fair to note here the prosecutor primarily focused the case on *first* degree felony murder.

**23** In truth, throughout the trial there was little to no focus on Goodwin's subjective awareness of the dangers attending firearms.  Of course, that often is the case when there is no confession in evidence.  We also recognize whether someone is "subjectively aware of the risk is [often] best answered by the question: how could he [or she] not be?"  (*People v. Moore* (2010) 187 Cal.App.4th 937, 941.)

knowledge of the danger.[24]  (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 842 ["Implied malice requires that the defendant act with a wanton disregard for the high probability of death [citation], thereby requiring a *subjective awareness* of a high degree of risk."].)  There is simply no assurance in this case the jury made that finding, or its equivalent.  (See *Chun, supra,* 45 Cal.4th at pp. 1204—1205 [alternative-theory error harmless if " 'jury verdict on other points effectively embraces' " valid theory].)

We acknowledge the harmless beyond a reasonable doubt standard of review is not "an ' absolute certainty' standard …." (*Hedgpeth v. Pulido* (2008) 555 U.S. 57, 62.) We also acknowledge the right to trial by jury "requires more than appellate speculation about a hypothetical jury's action …." (*Sullivan, supra,* 508 U.S. at p. 280.)  Trial by jury requires the *jury* to determine "that the defendant is guilty of every element of the crime with which he is charged …." (*United States v. Gaudin* (1995) 515 U.S. 506, 510.)

On this record, it is feasible the jury found Goodwin guilty based on the invalid felony murder-theory without ever confronting the question of malice.[25]  (Cf. *People v. Bejarano* (2007) 149 Cal.App.4th 975, 992—993 [second degree murder conviction reversed for alternative-theory error in part because "less demanding theory of felony murder [potentially] made it unnecessary [for jury] to reach the issue of whether appellant harbored malice"]; *Lucero, supra,* 200 Cal.App.4th at p. 49 [recognizing felony murder is a "shortcut for arriving at a murder verdict"].)  We must reverse the murder conviction because we reasonably doubt the jury here found, or effectively embraced, the implied malice necessary to sustain the verdict.

---

[24] On a related note, the Supreme Court in *Chun, supra,* held the instructional error itself was harmless but remanded for further proceedings to consider whether it was prejudicial "*in combination*" with another error relating to inadmissible evidence about the defendant's state of mind during the shooting.  (*Chun, supra,* 45 Cal.4th at pp. 1205—1206.)  There was no direct evidence of Goodwin's state of mind in this case.

[25] The risk the jury took the shorter felony murder path to finding murder proven is exacerbated by the fact it was instructed to unanimously agree on a murder theory.

## CONCLUSION

The Count 1 (§ 187) conviction will be reversed. The firearm enhancements on Count 1 are vacated. The People may retry this charge and the enhancements.[26]

The Count 2 (§ 664/211) and Count 3 (§ 246) will stand. The enhancements on Counts 2 and 3 remain.

At some point, the court must again pronounce judgment. At that time it should take care to apply any applicable, newly enacted or amended sentencing laws. (E.g., §§ 654, 1170.)

## DISPOSITION

The Count 1 conviction (§ 187) and judgment are reversed. The enhancements to Count 1 (§§ 12022.5, subd. (a) & 12022.53, subd. (d)) are vacated. The matter is remanded for proceedings consistent with this opinion.


SNAUFFER, J.

I CONCUR:


SMITH, J.

---

[26] Because Goodwin was acquitted of first degree murder, double jeopardy principles bar its retrial. (See *People v. Aranda* (2019) 6 Cal.5th 1077, 1083.)

DETJEN, Acting P. J., Concurring and Dissenting.

I concur that the prosecutor did not improperly vouch for minor A.'s credibility; sufficient evidence corroborated the testimonies of minors A. and I.; and any error with respect to the corroboration instructions was harmless. I also agree with the majority's determination that the trial court erroneously instructed the jury that an assaultive felony, i.e., shooting at an occupied motor vehicle, could serve as a basis for second degree felony murder. I disagree, however, with the conclusion that this particular error was prejudicial.

"In this situation, to find the error harmless, a reviewing court must conclude, beyond a reasonable doubt, that the jury based its verdict on a legally valid theory, i.e., either express or conscious-disregard-for-life malice." (*People v. Chun* (2009) 45 Cal.4th 1172, 1203 (*Chun*).) "If other aspects of the verdict or the evidence leave no reasonable doubt that the jury made the findings necessary for conscious-disregard-for-life malice, the erroneous felony-murder instruction was harmless." (*Id.* at p. 1205.)

Here, the jury convicted defendant Zachery Goodwin of second degree murder (count 1) as well as shooting at an occupied vehicle (count 3). As the majority stated, the jury "was instructed [that] second degree murder was provable either under a malice or felony-murder theory" (maj. opn. *ante*, at p. 11), but the verdict "did not specify the murder theory it relied upon" (maj. opn. *ante*, at p. 2). Concerning malice murder, the trial court advised:

> "Now, there are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. The defendant acted with express malice if he unlawfully intended to kill. The defendant acted with implied malice if, one, he intentionally committed an act, two, . . . the natural and probable consequences of that act were dangerous to human life . . . , three, at the time he acted he knew his act was dangerous to human life and, four, he deliberately acted with conscious [dis]regard for human life."

Concerning felony murder, the court instructed:

"The defendant is charged in Count One with murder under a theory of felony murder. To prove that the defendant is guilty of second-degree murder under this theory, the evidence must prove beyond a reasonable doubt that, one, the defendant committed or attempted to commit shooting at an occupied vehicle . . . , two, the defendant intended to commit shooting at an occupied vehicle . . . and, three, the defendant did an act that caused the death of another person.[1]

". . . To decide whether the defendant committed or attempted to commit shooting at an occupied vehicle . . . , please refer to the separate instructions that I will give you on those crimes. You must apply those instructions when you decide whether the People have proved second-degree murder under a theory of felony murder."

The court also instructed:

"The defendant is charged in Count Three with shooting at an occupied motor vehicle, in violation of Penal Code Section 246. To prove that the defendant is guilty of this crime, the People must prove beyond a reasonable doubt that, one, the defendant willfully and maliciously shot a firearm and, two, the defendant shot the firearm at an occupied motor vehicle.

"Someone commits an act willfully when he or she does it willingly or on purpose. Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with wrongful intent to disturb, annoy, or injure someone else."

Given the aforementioned instructions, "any juror who relied on the felony-murder rule necessarily found that defendant willfully [and maliciously] shot at an occupied vehicle." (*Chun*, *supra*, 45 Cal.4th at p. 1205.) "Indeed, we know the jury so found because . . . the jury convicted [him] of violating section 246." (*People v. Hach* (2009) 176 Cal.App.4th 1450, 1457.) Similarly, "the state of mind of a person who acts with conscious disregard for life is, 'I know my conduct is dangerous to others, but I don't care if someone is hurt or killed.' " (*People v. Olivas* (1985) 172 Cal.App.3d 984, 988.)

---

[1] As the Supreme Court recognized in *Chun*, these instructions "required the jury to find that defendant had the *specific intent* to commit the underlying felony of shooting at an occupied vehicle." (*Chun*, *supra*, 45 Cal.4th at p. 1205.)

2.

As recited by the majority, the evidence showed that defendant approached the victim's vehicle, tapped on the driver's window with a firearm, and fired four shots as the victim began driving away. The victim was struck three times and ultimately died. (Maj. opn. *ante*, at p. 3; see *Chun*, *supra*, at p. 1205 [multiple gunshots fired at victims' vehicle at close range]; *Hach*, *supra*, at p. 1457 [the defendant knowingly fired rifle at car occupied by two persons].) "No juror could have found that defendant participated in this shooting . . . without also finding that [he] committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life—which is a valid theory of malice. In other words, on this evidence, no juror could find felony murder without also finding conscious-disregard-for-life malice." (*Chun*, *supra*, at p. 1205; accord, *Hach*, *supra*, at p. 1457; see *People v. Moore* (2010) 187 Cal.App.4th 937, 941 ["Whether [a defendant] was subjectively aware of the risk is best answered by the question: how could he not be? It takes no leap of logic for the jury to conclude that because anyone would be aware of the risk."].) While the majority appears to have qualms about relying on circumstantial evidence to demonstrate defendant's subjective knowledge of the high degree of risk (see maj. opn. *ante*, at pp. 16-17), "[i]ntent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense." (*People v. Pre* (2004) 117 Cal.App.4th 413, 420; see *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 ["Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction."].)

Accordingly, I believe that the error in instructing the jury on second degree felony murder was harmless beyond a reasonable doubt and would affirm the judgment in its entirety.

DETJEN, Acting P. J.

3.